Filed 7/6/26  Rodriguez v. Paramount Convalescent Group CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| GRACE RODRIGUEZ, | B344443 |
| Plaintiff and Respondent, | Los Angeles County Super. Ct. No. 21STCV45537 |
| v. | |
| PARAMOUNT CONVALESCENT GROUP, INC., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Michael Shultz, Judge.  Affirmed in part, reversed in part with directions.

Giovanniello Law Group, Alexander F. Giovanniello, Martin R. Boags and Jenny T. Nguyen for Defendant and Appellant.

Smith Clinesmith and Dawn M. Smith for Plaintiff and Respondent.

Defendant Paramount Convalescent Group, Inc. (Paramount) appeals from the court's award of $81,536.13 in sanctions—consisting of attorney fees and costs—under section 128.5 of the Code of Civil Procedure[1] to plaintiff Grace Rodriguez based on defense counsel having elicited testimony that violated the parties' stipulation, resulting in a mistrial.  Defendant contends the trial court abused its discretion in granting the sanctions motion because the conduct was not frivolous or in bad faith, the attorney fees and costs awarded were "grossly inflated," and plaintiff failed to show the claimed legal work and costs had to be duplicated due to the sanctioned conduct. Defendant also challenges the court's underlying order declaring the mistrial.

We conclude the court did not abuse its discretion in declaring a mistrial or in awarding plaintiff sanctions under section 128.5.  Except for $5,500 in attorney fees, we also conclude the court acted within its discretion in finding the attorney fees and costs plaintiff claimed were the result of the mistrial.  Accordingly, we reverse in part the court's order awarding $68,450.00 in attorney fees and $13,086.13 in costs as sanctions against defendant and its attorney and direct the trial court to enter a new order reducing the award of attorney fees to $62,950.00.

## BACKGROUND

Plaintiff—in her individual capacity and as the successor in interest to decedent Evangeline Rodriguez—sued defendant for, among other causes of action, violations of the Elder and

---

[1]     Statutory references are to the Code of Civil Procedure unless otherwise noted.

2

Dependent Adult Civil Protection Act (elder abuse).[2]  The decedent was a " 'dependent adult' " at defendant's skilled nursing facility.  Plaintiff alleged defendant failed to establish mandated COVID-19 safety protocols and, as a result, the decedent died on December 17, 2020, after contracting the virus.

1.     ***Motion in limine***

Before the start of trial, both parties filed motions in limine.  Defendant's motion in limine no. 2 asked the court to exclude reference to any other lawsuits involving defendant.  The parties orally agreed to the mutual application of the in limine motion; they would not refer to other lawsuits involving either party.  According to plaintiff's counsel, she and defense counsel "announced this agreement . . . in open court" at the March 6, 2024 final status conference (FSC), but no court reporter was present.[3]  After the hearing, defense counsel prepared a written stipulation stating the parties agreed to "[e]xclude reference to other lawsuits, prohibiting the parties, their attorneys, and witnesses from offering any evidence and/or making any reference to other lawsuits involving any other party in the presence of jurors or prospective jurors" and had it emailed

---

[2]     Plaintiff was the decedent's sister and heir.  Plaintiff amended her complaint to add Ralph Rodriguez and Moriah Conteras as plaintiffs after defendant successfully moved to "abate action for failure to join indispensable parties."  They are not parties to this appeal.  For readability, we refer to a singular plaintiff.

[3]     The court's March 6, 2024 minute order states it granted defendant's motion in limine to exclude evidence of other lawsuits involving Paramount.

to plaintiff's counsel.  The attorneys never signed or filed the written stipulation, however.[4]

## 2.    *Mistrial*

The jury was selected over two days—March 14 and 15, 2024.  On March 18, plaintiff called her first witness—the administrator of defendant's facility—under Evidence Code section 776.  Defendant's attorney also questioned the witness.  He asked, "[D]id you ever feel like [plaintiff] was making threats?"  The administrator responded:  "There was [*sic*] a few occasions when she first came into the facility, . . . she shared with us in detail . . . when her loved one was first admitted, that she had had a prior lawsuit against another facility."  Plaintiff's counsel objected as nonresponsive and moved to strike the answer.  The court overruled the objection.  Defendant's attorney continued:

Q:  "Why did you interpret that as a threat?"

A:  "Well, . . . when somebody comes in and expresses that they . . . were successful in suing another facility, of course everybody gets a little bit on edge around that individual."

Q:  "How did that conversation come up?"

A:  "It was just in our very first opening conversation with her, where she . . . was expressing about how she had . . . that lawsuit and . . . that she wanted . . . to make sure that she didn't do that again.  And so she . . . had other incidents where she . . . would make

---

[4]    The stipulation was filed and the order signed before the retrial.

4

us feel as if we . . . were going to be going down that road with her."

Q: "How many times?"

A: "A few other occasions."

At the end of the examination, plaintiff's counsel told the court she had "one issue to address with the Court regarding Motion in Limine Number 2." The court had counsel explain the issue—off the record—at the break. After the break, the court noted—on the record—counsel had asked for a mistrial, which the court hadn't anticipated. It had been unaware of the parties' stipulation not to present evidence or refer to other lawsuits involving either party. Plaintiff's counsel gave the court the stipulation and argued that, although it wasn't signed, the parties had an agreement. She explained the administrator's testimony about plaintiff's comments "really caught me completely by surprise"—hence her "nonresponsive" objection and motion to strike. She stated the comments never came up in discovery or during the administrator's deposition. Counsel believed she had "preserved the error." She stated she had "not want[ed] to call any more attention to it because it [was] so inflammatory."

Plaintiff's counsel argued, "Counsel knew, obviously knew very well about this lawsuit, this alleged lawsuit in light of his questioning, and then didn't move on after the witness said it." She said she thought defense counsel was "a professional person," but argued "he was to instruct his witnesses not to mention any lawsuits, any prior lawsuits, and certainly should have at least moved on after that was said, to where we could do a curative instruction on it. [¶] But at this point I don't think a curative instruction will fix it, and I have no choice but to move

5

for a mistrial." Defendant's counsel stated he was not seeking to elicit the testimony and didn't expect it. He acknowledged the parties had agreed to the stipulation and, although it wasn't filed, he "intended to abide by it." He argued a mistrial was not appropriate and thought the "offending testimony can be stricken and that the . . . jury could be admonished." Plaintiff's counsel countered, "I mean, you just can't unring that bell. . . . I wish I could."

The following colloquy with defendant's attorney ensued:

Court: "[A]s soon as the witness answered, you had to have known that you were in violation of your own agreement that you had made with [plaintiff's counsel]. . . . [¶] I'm asking you when you first got the answer about the lawsuit, did you not know that any further questions would violate the agreement that you made with [plaintiff's counsel]?"

Counsel: ". . . [T]hat was unexpected. . . . I don't remember that testimony being particularly long. But I'm not going to claim . . . mistakes weren't made."

Court: "Didn't really answer my question . . . . My question pertains to what you were doing, not a confession or admission that you made a mistake . . . [¶] What was your plan? What was your intent? Why did you do what you did if you knew it violated the agreement that you made with [plaintiff's counsel]?"

6

Counsel: "I don't know that I thought very—confusion trying to get to the end of my examination, your Honor. I'm not going to —candidly say that that's what was going through my head or not, as the case may be, if not enough was going on."

The court had the attorneys confer to see if they could come up with a curative instruction. The court noted it had "never granted a mistrial in my life" based on a piece of evidence, but it was "seriously considering doing it." Defense counsel proposed the court advise the jury the parties had agreed to strike the testimony, and the jury wasn't to consider it. Plaintiff's counsel—representing that her clients had filed a lawsuit in the past but not against a care facility—argued the testimony was "a complete fabrication with no basis whatsoever, which makes it even more inflammatory." She argued that, for any curative instruction to be effective, the court also would have to tell the jury the statement was a fabrication without factual basis. Defendant's counsel objected.

The court said it appreciated that defense counsel did not deny his oral agreement with plaintiff's counsel. The court continued, "I don't really appreciate the manner in which you questioned the witness, because I listened and sure looked like you knew what you were asking for. It sure looked like you knew what the evidence was. And even if I accept the statement at face value that you didn't know what he was going to say, you knew what he said once he said it and you kept going. You just kept going. And that's a problem." The court accepted plaintiff's counsel's representation as to "why [she] didn't object further." The court then ruled:

7

"[T]he problem that I see here is not just that [the lawsuit] was mentioned. It's that it was both mention[ed] and asked about repeatedly. [¶] And it's not just that the answers were given. The context of the answers, in terms of when the statement was allegedly made by [plaintiff], when [decedent] arrived at the facility, looks as if or implied that [plaintiff] was essentially fabricating or planning a lawsuit against Paramount; that Paramount either had to be careful how they behaved or they would have a lawsuit, or the negative inference is that she was there knowing her loved one was sick and planning some type of lawsuit against the defendant. [¶] There's no way to recover from that, and the curative instruction that you asked me for, to unring the bell or strike it, I don't think will work, notwithstanding the fact that this is the first witness of the trial, the very first witness. And I think that the problem here cannot be cured by a limiting instruction. So I'm granting the mistrial."

Plaintiff's counsel asked the court to set a new trial date within the next 30 days rather than order a new jury panel for the next day. She explained she had an expert en route who would not be able "to just sit and wait here for a couple of days while we pick a jury." She also didn't "know the feasibility of rescheduling everybody" for the next week because it had been hard to schedule the experts. The court asked plaintiff's counsel to pick a date. She first tried calling her experts but reached only one of three. She also stated she intended to file a motion for sanctions—"for reimbursement of the trial expenses, expert

expenses, and everything else like that." She asked that the court reset the trial for some time in April or May to allow "that motion to go forward in a properly noticed manner." The court set the retrial for May 6, 2024, and the final status conference for April 29, 2024.

### 3. *Motion for Sanctions*

On April 3, 2024, plaintiff filed a motion for sanctions under section 128.5 supported by plaintiff's lead attorney's declaration. Plaintiff asked for $68,450 in attorney fees based on 123 hours, and $13,086.13 in costs, incurred "in relation to the trial that resulted in a mistrial because of Defendant and Defendant's counsel's frivolous bad faith actions." Plaintiff argued defendant and/or defendant's counsel acted in bad faith when the administrator testified about plaintiff having filed a lawsuit against another care facility—and counsel continued to question the witness on the subject—in violation of the parties' agreement. Plaintiff also contended the fees—based on hourly rates of $750 for a managing partner and $350 for an associate —were reasonable in light of the expertise required to litigate an elder abuse case and the number of hours counsel had to spend on the case due to the mistrial.

Defendant filed an opposition along with evidentiary objections, a request for judicial notice of pretrial documents filed in the case, and its attorneys' declarations. Defendant argued the mistrial wasn't warranted, and its attorney didn't violate section 128.5. It also argued plaintiff's claimed "expenses" were unreasonable because they included "all fees and costs incurred starting with the March 6, 2024 [FSC] through the events of March 18, 2024," and counsel's hourly rates were not supported by admissible evidence. Defendant contended plaintiff's

9

attorneys' "normal trial preparation"—including fees and costs incurred litigating the court's pretrial rulings on March 6 and 13, "which the parties [were] bound by"—would not have to be repeated. It argued that, at most, plaintiff was entitled to only those fees and costs incurred for counsel's appearances in court on March 14, 15, and 18 for jury selection, opening statements, and the administrator's examination.

On April 29, the trial court held the FSC before the retrial and continued the sanctions hearing to May 3. Neither party objected to the exhibits to be presented at trial. The court ordered the parties to sign and file any stipulation regarding evidence.

On May 3, the court issued a tentative ruling granting plaintiff's motion for sanctions and heard argument. Defendant's counsel argued the testimony about the lawsuit was inadvertent. The court disagreed and adopted its tentative ruling granting the sanctions motion. The court deferred its determination of the amount of reasonable expenses—including attorney fees—to award plaintiff until the conclusion of the matter.

**4.** ***Retrial and determination of amount of sanctions***

The retrial began on May 6. On May 20, 2024, the jury rendered a verdict in favor of defendant. After the verdict, the court briefly heard argument on the amount of sanctions. The court entered a defense judgment on June 10, 2024.

On July 17, plaintiff filed a motion for determination of costs and attorney fees on the sanctions motion. Defendant opposed it. It argued the motion was improper—as the sanctions

10

motion remained under submission—and should be denied to the extent it sought new fees and costs.[5]

On August 13, 2024, the court heard the motion. The court adopted its tentative ruling stating it could not "determine whether costs and fees were reasonably incurred based on the conclusory declarations of counsel, which do not describe the work done that was required to be duplicated as a result of Defendant's conduct." The court then noted neither the motion for sanctions nor the present motion included any billing records. Plaintiff had provided a "table of costs," but it also wasn't clear to the court that plaintiff was "required to duplicate any of those costs at the time of re-trial." The court also found plaintiff's counsel's declaration "alone does not provide sufficient facts for the court to exercise its discretion in determining whether reasonable fees and costs can be attributed to Defendant's bad faith actions or tactics." The court found plaintiff's counsel "did not provide any support, other than their own conclusions, that $750 and $350 per hour are prevailing and reasonable market rates in the community for similar actions." The parties agreed to continue the motion to November 1. The court ordered plaintiff's counsel "to provide additional evidence, including billing records, preferably in spreadsheet format, and any other evidence to demonstrate that costs and fees incurred prior to the mistrial can be attributed to defense counsel's conduct sanctionable under . . . § 128.5." The court ordered counsel to

---

[5]     Apparently in error, plaintiff's moving papers stated plaintiff incurred both $13,086.13 and $34,857.81 in costs due to the mistrial. Plaintiff's reply clarified the motion sought no new costs, only the originally claimed $13,086.13.

11

file a supplemental declaration with supporting evidence 10 court days before the continued hearing date.

On November 1, 2024, the court continued the hearing on the motion for determination of costs and fees to January 2025. The court ordered plaintiff "to comply with the court's prior order requiring billing and other relevant records and a supplemental declaration 10 court days prior to the hearing." Plaintiff's counsel did not file a supplemental declaration until January 15, 2025. The declaration attached a table breaking down the attorney fees plaintiff had requested in a manner similar to a spreadsheet or billing record. Defendant filed an opposition to the supplemental declaration, arguing it was untimely and added no information or evidence to counsel's original declaration.

On January 22, 2025, the court heard argument and took the matter under submission. On January 29, the court issued its order granting the motion. The court noted it initially had heard the motion for determination on August 13, 2024, "but continued the hearing to allow [p]laintiff to submit a supplemental declaration and evidence in support of the amount of sanctions to be awarded under . . . § 128.5." The court also noted plaintiff's supplemental declaration was untimely. The court considered it—and defendant's opposition to the supplemental declaration—as defendant had not shown any prejudice from plaintiff's delay.

The order stated plaintiff's lead attorney had asked for an hourly rate of $750 per hour, based on her 23 years of experience "primarily litigating elder abuse cases," and $350 per hour for work an associate attorney had performed. The court acknowledged counsel worked on a contingency fee basis.

12

The court found the rates requested were "reasonable in light of the specialized nature of the litigation."

The court also found plaintiff adequately had supported the $13,086.13 in requested costs with "a ledger for travel and hotel room expenses incurred by counsel and their witnesses until the mistrial." As for attorney fees, the court noted plaintiff had "request[ed] fees performed for all hours expended to prepare for the trial." The court found plaintiff was "required to duplicate the efforts expended for trial preparation generally, jury selection, opening statements, reviewing records, preparing for and examining the first witness, and both counsel's attendance at trial, all of which were required to be duplicated upon retrial." The court stated it had reviewed counsel's declaration and exhibit. It found "[t]he time spent by one managing partner and one associate attorney appears reasonable." The court acknowledged defendant took "issue with the table submitted as evidence of fees incurred as it does not appear to be a billing record." However, the court noted "[a]n attorney's testimony as to the number of hours worked is sufficient evidence to support an award of attorney fees, even in the absence of detailed time records." The court awarded sanctions in favor of plaintiff and against defendant and its attorney, jointly and severally, consisting of $68,450 in attorney fees and $13,086.13 in costs, as plaintiff originally had requested.

## DISCUSSION

### 1. *The mistrial was not an abuse of discretion*

"The fundamental idea of a mistrial is that some *error* has occurred which is too serious to be corrected, and therefore the trial must be terminated, so that proceedings can begin again. [Citation.]" (*Blumenthal v. Superior Court* (2006) 137

13

Cal.App.4th 672, 678 (*Blumenthal*).) " 'A trial court should *grant* a mistrial *only* when a party's chances of receiving a fair trial have been irreparably damaged.' " (*Id.* at p. 679.) " 'Whether a particular incident is incurably prejudicial is by its nature a speculative matter, and the trial court is vested with considerable discretion in ruling on mistrial motions.' " (*Id.* at p. 678.) Thus, "the trial judge, present on the scene, is obviously the best judge of whether any error was so *prejudicial to one of the parties* as to warrant scrapping proceedings up to that point." (*Ibid.*)

"Though the standard of review from a mistrial order is abuse of discretion, our Supreme Court has a 'substantive preference against them' that restricts the deferential abuse standard to orders denying mistrials." (*Petrosyan v. Prince Corp.* (2013) 223 Cal.App.4th 587, 593 [reversing order granting mistrial where admonition to jury would have been sufficient].) We therefore review an order *granting* a motion for mistrial for "abuse of discretion with elevated scrutiny." (*Blumenthal, supra*, 137 Cal.App.4th at p. 682.)

Applying this elevated standard, we find no abuse of discretion. Defendant argues—as it did at trial—that the court could have cured any prejudice to plaintiff from the administrator's testimony by striking the testimony and giving an appropriate curative instruction.[6] The court found that telling

---

[6]     Defendant also asserts the court "accepted the proposition that a curative instruction could address [plaintiff's] purported prejudice by instructing the parties to meet and confer on possible language." The trial court addressed this very same contention in its order granting sanctions. The court explained, "The court's order to meet and confer regarding a potential curative instruction is not evidence that the Court 'accepted'

14

the jury the parties had agreed to strike the testimony and the jury was not to consider it would not "work." The court specifically found the problem was "not just that [the lawsuit] was mentioned," but "that it was both mention[ed] and asked about repeatedly." The court stated counsel "went on and on and on about it with the witness." The court found "[t]he context of the answers, in terms of when" plaintiff made the alleged statement—when the decedent arrived at the facility—"implied that [plaintiff] was essentially fabricating or planning a lawsuit against Paramount." The court concluded "[t]here's no way to recover from that."

We cannot find the court's assessment—that an admonition could not correct the introduction of the improper testimony—was an abuse of its discretion. At the initial hearing on the motion for sanctions, the court stated it disagreed with defense counsel that the testimony was "inadvertent." The court reiterated, "the context, the timing, the event, the fact that it was the first witness, the manner in which it was teased out of the witness, the fact that we were relatively at the very beginning stages of the trial and that it was the first thing that the jurors essentially heard from the defense—all of those contributed to my conclusion that a mistrial was necessary." The court was candid—it never had granted a mistrial based on the improper introduction of evidence and "didn't want to grant one." Yet the trial court did, implicitly having found the improper testimony was incurably prejudicial. The trial court was in the best position to make that finding.

---

or concluded anything about the prejudicial impact of [defense counsel's] questions and [the witness's] responses."

Defendant contends *Pope v. Babick* (2014) 229 Cal.App.4th 1238 (*Pope*) is directly analogous. It is not. There, the reviewing court affirmed an order denying a motion for mistrial when an attorney improperly elicited excluded testimony from a patrol officer about his report's conclusion as to the cause of the accident at issue. (*Id.* at pp. 1240–1244, 1248–1249.) The trial court admonished the jury and gave a curative instruction. (*Id.* at pp. 1244, 1248–1249.) In *Pope*, however, the trial court had confirmed that plaintiffs' expert would testify that there were problems with the officer's report, and the factual basis for his conclusion was incorrect. (*Id.* at p. 1248.) The appellate court noted the court chose to admonish the jury—rather than declare a mistrial—based "partly on the expected testimony of plaintiffs' expert regarding the overall handling of the investigation, which it believed would eliminate any realistic possibility of prejudice once the curative instruction was given." (*Id.* at p. 1249.) The appellate court also noted the attorney's misconduct "was one question, on a single occasion." (*Id.* at p. 1250.)

Here, in contrast, there was no evidence plaintiff could introduce that would diminish the effect of the administrator's improper testimony. Any counter-testimony undoubtedly would call further attention to the administrator's testimony that plaintiff had—at least by implication—threatened defendant with filing a lawsuit like the one she purportedly had filed against another facility. Moreover, defense counsel didn't stop after the witness testified about the supposed lawsuit. Counsel asked follow-up questions, eliciting further testimony on the excluded subject. (Cf. *Pope, supra*, 229 Cal.App.4th at p. 1251 ["a single impermissible question and answer is not sufficient to override the judge's instructions and the remainder of the

16

proceedings"].) Defense counsel also knew the testimony would be prejudicial. As the court noted, defendant's motion in limine no. 2—filed before the parties stipulated to its joint application—argued any reference to other lawsuits involving defendant "would create a substantial danger of misleading the jury, would be prejudicial to Paramount, and would compromise the veracity of testimony of witnesses waiting to testify." The same would be true for plaintiff. Accordingly, the record amply supports the court's conclusion that an admonishment would not cure the improper introduction of the testimony and prejudice to plaintiff.

**2.** ***The court did not err in awarding plaintiff sanctions***

A court has discretion to award reasonable expenses—including attorney fees—incurred as a result of "actions or tactics, made in bad faith, that are frivolous or solely intended to cause unnecessary delay." (§ 128.5, subd. (a).) Thus, "[t]o be entitled to sanctions the moving party must show the action or tactic was in bad faith *and* frivolous or brought solely to cause unnecessary delay." (*Harris v. Rudin, Richman & Appel* (2002) 95 Cal.App.4th 1332, 1343 (*Harris*).) " 'Frivolous' " means "totally and completely without merit or for the sole purpose of harassing an opposing party." (§ 128.5, subd. (b)(2).) "Whether an action is 'frivolous' under . . . section 128.5 'is governed by an objective standard: Any reasonable attorney would agree it is totally and completely without merit. [Citation.] But there must also be a showing of an improper purpose, i.e., *subjective* bad faith on the part of the attorney or party to be sanctioned. [Citation.]' " (*Gemini Aluminum Corp. v. California Custom Shapes, Inc.* (2002) 95 Cal.App.4th 1249, 1262 (*Gemini*).) "When a tactic or action utterly lacks merit, a court is entitled to infer the party knew it lacked merit yet pursued the action for some

17

ulterior motive." (*Dolan v. Buena Engineers, Inc.* (1994) 24 Cal.App.4th 1500, 1505.)

We review a sanctions order under section 128.5 for an abuse of discretion. (*Sabek, Inc. v. Engelhard Corp.* (1998) 65 Cal.App.4th 992, 1001.) Under that standard, "[w]e do not independently determine whether appellant's conduct was frivolous or in bad faith, and we may not substitute our judgment for the judgment of the court below." (*Ibid*.) We also " 'presume the trial court's order is correct' " and "will uphold all orders based on express or implied findings supported by substantial evidence." (*Noland v. Land of the Free, L.P.* (2025) 114 Cal.App.5th 426, 438.)

Defendant argues counsel's questioning of the administrator was neither frivolous nor in bad faith. Defendant asserts counsel was seeking admissible testimony about plaintiff's state of mind, represented he did not elicit the "offending testimony," and declared the testimony was inadvertent. The court found defendant's "conduct, given . . . what [defense counsel] knew, the stipulation, and his persistence in questioning the witness about his conversation with [plaintiff] despite the parties' agreement, was in bad faith and was frivolous." The court stated: Defense counsel's "contention that the witness['s] response was inadvertent, is without merit. The witness apparently was not prepared to avoid testimony of other lawsuits. Any purported 'inadvertent mention' became intentional as [defense counsel] continued his inquiry about the conversation, eliciting yet more testimony about everyone being 'on edge' about [plaintiff] because of her comments, all of which violated the parties' stipulation." And at the initial sanctions hearing, the court told counsel it did "not in any respect believe"

18

the witness "inadvertent[ly] mention[ed]" the lawsuit, and referred to "the context, the timing, the manner in which it was teased out of the witness." The court "disagree[d] with" counsel "entirely about whether it was inadvertent."

Substantial evidence supported the court's findings. First, the trial court considered defense counsel's statements but clearly did not credit them. We will not second-guess the court's credibility determinations. (See *Cornerstone Realty Advisors, LLC v. Summit Healthcare REIT, Inc.* (2020) 56 Cal.App.5th 771, 806 [assessing credibility of witnesses on sanctions motion is the "task and exclusive province" of the trial court].) As the court noted at the May 20 hearing, if defense counsel "were a neophyte, [the court] could chalk that up to mistake to somebody inexperienced [without] a lot of trial experience," but he was "extremely experienced."[7] The court also noted counsel was "under a duty and knew about his responsibilities to inform all the witnesses about any court orders vis-à-vis stipulations." Yet when the court asked defense counsel if he had admonished the witness, counsel claimed that information was covered by the attorney-client privilege, which the court "found astonishing." Nor did counsel's declaration in opposition to the sanctions motion explain whether he told the witness not to mention any prior lawsuits or "why there was no discussion or admonition on the part of [defense counsel to the witness] about that agreement."[8]

---

[7] Counsel had litigated over 30 jury trials to verdict.

[8] At the initial May 3 hearing, the court noted it had looked through defense counsel's declaration "to determine whether or not you articulated or wrote anything about your conversation with [the witness] prior to him testifying, and I didn't see

19

Moreover, as the court explained when it granted the mistrial, even if it accepted counsel's "statement at face value that [he] didn't know what [the witness] was going to say," counsel "just kept going." Once the witness said plaintiff mentioned she had filed a lawsuit, defense counsel asked about that conversation "repeatedly." At the time, the court was unaware of the parties' stipulation, but once the witness mentioned the alleged lawsuit, *counsel* knew the testimony violated the parties' agreement. Rather than moving on to another subject, however, counsel asked the witness why he interpreted plaintiff's mention of the lawsuit as a threat. That elicited further testimony about plaintiff having stated she had been "successful in suing another facility." Counsel probed further still, asking how the conversation had come up and how often. Not surprisingly, the witness expanded further on the taboo subject—that plaintiff mentioned having filed that lawsuit in her first conversation with him and said she wanted to make sure she didn't do that again, she had "other incidents," and made defendant "feel as if we . . . were going to be going down that road with her." We agree with the trial court that, even if the administrator's first mention of the lawsuit was inadvertent, counsel's continued questioning of the witness about his conversation with plaintiff was anything but inadvertent and supports the court's finding of bad faith.

The questioning also was frivolous. As the court noted throughout the proceedings, counsel knew the witness was not

anything about that." Defense counsel confirmed the court was correct and said he was "challenged in what to disclose to the court" "due to privilege."

to refer to any other lawsuits involving plaintiff (or defendant). Indeed, defendant's attorneys prepared the stipulation and its trial counsel intended to abide by it. It is undisputed defense counsel knew such testimony was prohibited. As the court noted, despite that knowledge, "once the witness mentioned a prior lawsuit, [defense counsel] persisted in questioning the witness about the context of the conversation and how often it occurred." Counsel's follow-up questions could lead only to more prohibited testimony even if counsel's initial question—whether the witness ever felt plaintiff "was making threats"—sought evidence of plaintiff's state of mind.[9] Any reasonable attorney would agree counsel's continued inquiry thus was " 'totally and completely without merit.' " (*Gemini, supra*, 95 Cal.App.4th at p. 1262.) And given counsel knew his continued inquiry would further violate the parties' agreement, the court reasonably could conclude his conduct was in bad faith. (See *Harris, supra*, 95 Cal.App.4th at p. 1344 [court reasonably could conclude defendants' "continuous filing of motions" "constituted bad faith": court could infer defendants knew their motions—that repeated the same claim the court already had rejected—lacked merit, "yet continued to pursue their claim for some ulterior motive"].)

---

[9]     Counsel declared he asked the administrator about statements plaintiff made that the witness "perceived as threatening[,] . . . seeking evidence of [plaintiff's] state of mind, and not evidence of prior lawsuits . . . . [The administrator's] testimony was inadvertent as I was not seeking evidence of prior lawsuits. I asked a couple follow-up questions and completed my examination."

### 3. *Substantial evidence supported most of the sanction award*

#### a. *Applicable law and standard of review*

Section 128.5 allows the court to award attorney fees and other expenses that were incurred "as a result" of bad faith, frivolous actions or tactics. (§ 128.5, subd. (a).) Courts have interpreted this language to "require[ ] no more than a causal relationship between the offending legal action and the expenses incurred by the opposing party." (*On v. Cow Hollow Properties* (1990) 222 Cal.App.3d 1568, 1577; see also *Tenderloin Housing Clinic, Inc. v. Sparks* (1992) 8 Cal.App.4th 299, 307–308 [cost of attorney's airfare and lost vacation days were "reasonable expenses" under § 128.5 because they "proximately result[ed]" from the sanctionable conduct].) Expenses that "amount[ ] to consequential damages," however, may not be awarded under section 128.5. (*Brewster v. Southern Pacific Transportation Co.* (1991) 235 Cal.App.3d 701, 707–710, 716 [trial court properly awarded attorney fees incurred in lifting nonexistent TRO but had no authority to award costs defendant incurred in closing down its operations due to defendant's belief TRO existed based on plaintiff's counsel's sanctionable conduct].) The statute limits sanctions "to what is sufficient to deter repetition of the action or tactic or comparable action or tactic by others similarly situated." (§ 128.5, subd. (f)(2); see *Childs v. PaineWebber Incorporated* (1994) 29 Cal.App.4th 982, 995–996 [§ 128.5 permits an award of attorney fees "not simply as appropriate compensation," but also "as a means of controlling burdensome and unnecessary legal tactics"].)

When determining attorney fee awards, trial courts generally begin with the "lodestar"—"the reasonable hours spent,

22

multiplied by the hourly prevailing rate for private attorneys in the community conducting *noncontingent* litigation of the same type." (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1133 (*Ketchum*).) " 'The value of legal services performed in a case is a matter in which the trial court has its own expertise,' " and it " 'may make its own determination of the value' " of those services. (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1096; see *Ketchum*, at p. 1132 [experienced trial judge is the best judge of the value of an attorney's services appearing in his or her courtroom].) The lodestar method thus " 'vests the trial court with the discretion to decide which of the hours expended by the attorneys were "reasonably spent" on the litigation' [citation], and to determine the hourly rates that should be used in the lodestar calculus." (*Morris v. Hyundai Motor America* (2019) 41 Cal.App.5th 24, 35.)

"It is well established that 'California courts do not require detailed time records, and trial courts have discretion to award fees based on declarations of counsel describing the work they have done and the court's own view of the number of hours reasonably spent.' " (*Syers Properties III, Inc. v. Rankin* (2014) 226 Cal.App.4th 691, 698 (*Rankin*); *City of Colton v. Singletary* (2012) 206 Cal.App.4th 751, 784–785 [absence of time records and billing statements does not deprive trial court of substantial evidence to support fee award—the " 'verified time statements' " of an attorney " 'are entitled to credence in the absence of a clear indication the records are erroneous' "]; *Bernardi v. County of Monterey* (2008) 167 Cal.App.4th 1379, 1398 (*Bernardi*) [" 'trial court could make its own evaluation of the reasonable worth of the work done in light of the nature of the case, and of the credibility of counsel's declaration unsubstantiated by time

23

records and billing statements' "].)  And "in the matter of an award of attorneys fees under CCP § 128.5, the court is not bound in its determination by such traditional factors as hours consumed, statements mailed, results attained, and the like." (*Dwyer v. Crocker National Bank* (1987) 194 Cal.App.3d 1418, 1438 (*Dwyer*).)  An award of attorney fees as sanctions under section 128.5 "is not the subject of a 'strict accounting' as might be required in other areas of the law."  (*Dwyer,* at p. 1438.)

In short, "the determination of what constitutes reasonable legal services is committed to the discretion of the trial court." (*Pech v. Morgan* (2021) 61 Cal.App.5th 841, 856; *Bernardi, supra,* 167 Cal.App.4th at p. 1394 [trial court has " 'broad discretion' " to determine amount of a reasonable attorney fee award].)  "In exercising its discretion, the trial court may accordingly 'consider all of the facts and the entire procedural history of the case.' " (*Bernardi,* at p. 1394.)  We will not overturn an attorney fee award unless we find " ' "a manifest abuse of discretion, a prejudicial error of law, or necessary findings not supported by substantial evidence." ' " (*Ibid.*)  Thus, while the trial court's judgment is subject to review, we will not disturb it unless we are convinced it is clearly wrong. (*Ketchum, supra,* 24 Cal.4th at p. 1132.)

　　b.　　*Plaintiff presented evidence of reasonable attorney fees and costs incurred as a result of the mistrial*

Here, plaintiff could recover attorney fees and costs incurred as a result of the mistrial—the consequence of defendant's counsel's sanctioned conduct.  Defendant argues the court abused its discretion in awarding the requested fees and costs, having earlier found plaintiff's evidence was

24

insufficient.[10]  We can infer the court ultimately found plaintiff's evidence was sufficient to enable it to exercise its discretion. And, except as discussed below, the evidence supported the court's award.

    i.  The court could determine plaintiff's reasonable expenses from counsel's declarations and table

  In its January 29, 2025 order awarding attorney fees and costs, the court acknowledged it had continued the August 13, 2024 hearing on plaintiff's motion because plaintiff "did not provide sufficient facts from which the court could exercise its discretion to determine whether reasonable fees and costs claimed by [p]laintiff[ ] could be attributed to [d]efendant's bad faith actions or tactics."  The court noted it had ordered plaintiff's counsel "to provide additional evidence, including billing records and a supplemental declaration."  The court also acknowledged defendant's argument that plaintiff's counsel's supplemental declaration was untimely and did "not clarify whether the costs and fees were reasonably incurred."  And after hearing argument on January 22, the court stated it would "take a closer look at my prior orders."

---

[10] Defendant repeatedly asserts the court found plaintiff's counsel's declaration insufficient when it granted plaintiff's motion for sanctions on May 3, 2024.  Defendant is mistaken. On May 3, the court found plaintiff was entitled to sanctions but deferred its determination of the amount to award until the matter concluded.  The court did not order plaintiff to produce "evidence of duplicated efforts" at that time, as defendant asserts. Defendant's only citation to support its assertion is to the last page of plaintiff's motion for sanctions.

25

The court thus was well aware of its prior ruling and defendant's contention. The court, however, had discretion to reevaluate plaintiff's evidence—and consider the parties' arguments—before issuing its final order. We can infer the court found counsel's table—in an easier-to-read format akin to a billing record or spreadsheet—enabled it to determine, in conjunction with counsel's earlier-filed declaration, that the claimed attorney fees and costs were reasonable and attributable to the sanctioned conduct.

That table broke out in columns the task performed, the date it was performed, the time spent on the task, the hourly rate, the attorney who performed the task (the managing partner or associate), and the cost for each attorney's work on the task— calculated by multiplying the hours worked by the hourly rate. The table showed the grand total of hours spent—123—and fees incurred—$68,450.[11] As defendant argued, the table described each task very generally. For example, "Comprehensive Trial Preparation," "Medical Chart Review," "Preparing Administrative Expert," "Plaintiff Testimony Preparation," and "Final Witness and Evidence Prep."

In turn, plaintiff's counsel's original declaration—filed before the retrial with the sanctions motion—described with relative detail the tasks the attorneys performed, and stated the number of hours they spent on each task, but did not calculate the fees incurred for each task. Counsel declared she had "provide[d] a conservative recitation of our trial preparation efforts for the first trial in this matter leading up to the mistrial."

---

[11]    Counsel's original declaration gave subtotals of the cost by attorney. They add up to the total in the table.

26

She then described those efforts by date—which correspond to the "tasks" outlined in the later-filed table—as follows:

- March 6: "preparing for" and attending the FSC;
- March 12: "meeting with the plaintiff[ ] in preparation for trial" and "preparing for trial . . ., which included preparing voir dire questions, and, going through evidence and our presentation during voir dire";
- March 13: attending trial "during the voir dire process" and "preparing for trial, which included drafting percipient witness examination outlines, going through evidence, and preparing for voir dire";
- March 14: attending trial "during the voir dire process" and "preparing for trial, which included drafting percipient witness examination outlines and going through evidence";
- March 15: attending trial "during the voir dire process";
- March 16: "preparing for trial, which included drafting plaintiff['s] witness examination outlines, preparing witnesses, reviewing and selecting relevant evidence, and drafting Plaintiff['s] opening statement";
- March 17: "reviewing [the decedent's] original medical chart," "preparing our administrative expert to testify at trial," "preparing the plaintiff[ ] for [her] testimony," and "preparing for trial which included drafting expert witness examination outlines, drafting plaintiff's opening statement,

reviewing evidence, and preparing for witness examination"; and

- March 18: attending trial.

Counsel also declared that, "[w]hile much of the preparation work pertains to events other than just jury selection, opening [statements,] and taking the first witness, myself and my associate will have to duplicate the majority of the time and effort of trial preparation to be ready again to try this case on May 6, 2024." At the January 22 hearing, counsel said she "tried painstakingly to detail my work without giving away work product." Counsel said, "I was very careful in calculating my fee, which I think is very reasonable, and the time that I spent that was very reasonable that I should never have had to duplicate, but for the conduct out of [defendant's attorney] in the first trial."

The court was entitled to rely on counsel's declaration describing the attorneys' work. (*Rankin, supra*, 226 Cal.App.4th at p. 698.) We can infer the court considered the cost breakdown of each task from the table *together with* the details counsel provided in her original declaration—as well as its own experience—when it found the above "efforts . . . were required to be duplicated upon retrial," and the "time spent" by both attorneys was reasonable. We also can infer the court credited plaintiff's counsel's declaration that she and her associate would have to duplicate the majority of their time and effort preparing for the trial and that counsel had "provide[d] a conservative recitation" of their "trial preparation efforts." The court reasonably could find counsel had not asked for every minute she and her associate spent preparing for the trial but only the

28

time they reasonably would again have to spend for the retrial.[12] In any event, attorney fees awarded under section 128.5 are "not the subject of a 'strict accounting.' " (*Dwyer, supra*, 194 Cal.App.3d at p. 1438.)

Defendant asserts plaintiff's counsel "never submitted any evidence of duplicated efforts, only the leadup to the mistrial." It implies plaintiff's attorneys had to present time records from the retrial to show they duplicated their efforts from the first trial. Defendant cites no authority to support such a requirement. Moreover, plaintiff filed her motion for sanctions —and the court granted it—*before* the retrial began. The court —noting plaintiffs who successfully establish an elder abuse claim are entitled to attorney fees and costs—deferred its determination of the amount of expenses, including attorney fees, to award until the matter concluded. (Citing Welf. & Inst. Code, § 15657, subd. (a).) Although plaintiff separately moved—after the retrial—for the court to determine the amount of sanctions defendant owed plaintiff, the motion was based on the fees and costs presented in counsel's declaration filed with the already-granted sanctions motion.

---

[12] For example, defendant argued plaintiff's "fees and costs from March 6 . . . through March 13, 2024, were necessarily incurred" as part of counsel's "normal trial preparation," "illustrated by" plaintiff having filed "multiple versions of joint pretrial documents up to opening statements." But counsel didn't ask for fees incurred in preparing the various joint pretrial documents (exhibit list, witness list, jury instructions) or plaintiff's own in limine motions, proposed special verdict, or trial brief—all exhibits to defendant's opposition—that would be used for the retrial.

The court acted within its discretion in determining the amount of plaintiff's "reasonable expenses" based on the attorney fees and costs plaintiff incurred leading up to the mistrial. They were directly related to the sanctioned conduct—due to the mistrial, plaintiff's counsel had to start over.

        ii.     The court reasonably could find plaintiff's attorneys had to duplicate their trial preparation efforts and costs

Defendant essentially concedes plaintiff's attorneys had to duplicate their attendance at the first trial on March 14, 15, and 18—for jury selection, opening statements, and the testimony of the first witness—as a result of the mistrial. Defendant contends plaintiff's counsel's evidence, however, did not show they had to duplicate "any efforts" from the first trial, "except for court time." Plaintiff does not address this contention.

Except for one of counsel's claimed time entries, we conclude substantial evidence supported the court's finding that plaintiff's attorneys had to "duplicate" their trial preparation efforts from the first trial for the retrial. Those efforts, as described above, included getting plaintiff and witnesses ready, reviewing the evidence, and preparing for voir dire, opening statements, and witness examinations. Defendant argued plaintiff's trial preparation would "not have to be repeated" for the retrial, as the case was "now fully prepared for trial." We can infer the trial court rejected that argument—no reasonable attorney would walk into a new trial, solely relying on earlier preparations. The court reasonably could conclude plaintiff's attorneys would not begin the retrial without again preparing for witness examinations and opening statements, reviewing the evidence, talking to their client, ensuring their

30

witnesses were prepared, and preparing to select a new jury. We cannot say no reasonable judge could find this type of work would be repeated in a retrial. The court presided over both the mistrial and the retrial. It was in the best position to determine whether the time counsel spent on the case was reasonable and reasonably reflected what counsel had to duplicate for the retrial.

Defendant took particular issue with plaintiff's counsel's claimed hours relating to pretrial rulings the court made at the March 6 FSC and March 13 proceedings. On appeal, defendant also asserts plaintiff's counsel was able to rely on the court's rulings from the initial FSC. It also notes plaintiff acknowledged jury selection took only two days—March 14 and March 15.

We agree with defendant that the record does not support finding plaintiff's attorneys would have had to duplicate their efforts attending trial on March 13. Plaintiff's counsel declared she and her associate spent five hours on March 13 "attending trial in this matter during the voir dire process." However, the court's minute order—and plaintiff's respondent's brief—state the trial court ruled on two motions in limine and conferred with counsel about the witness list and exhibits on that date. Jury selection did not begin until March 14. As defendant noted, the court's pretrial rulings from the first trial did not have to be relitigated for the retrial. Accordingly, there would have been no need for the parties or court to duplicate the proceedings that took place on March 13 for the retrial.

As for the FSC, however, plaintiff's counsel would not have had to attend the second FSC on April 29 for the retrial if there hadn't been a mistrial. The court's rulings at the March 6 FSC may have applied to the retrial, but a second FSC was scheduled and required. Defendant argued, as it does on appeal, plaintiff's

31

counsel opted to delay the retrial until May 6—rather than proceed the day after the mistrial—so that she could file the sanctions motion. In essence, defendant argues that "choice" caused counsel to incur travel costs unnecessarily and the setting of another FSC. The trial court implicitly rejected that contention, as do we. Plaintiff's counsel explained she could not reschedule her expert witnesses that quickly. One was on a flight to the trial and wouldn't have been able to wait while the parties picked a new jury. And before agreeing to a May 6 trial date, counsel attempted unsuccessfully to reach her experts by phone. She did tell the court she wanted to file a motion for sanctions but that was secondary to the mistrial having affected the scheduling of her experts. Accordingly, the court reasonably could find plaintiff's expenses due to the mistrial included those relating to the FSC.

As for the $13,086.13 awarded in costs, the court found plaintiff's request was supported by the "ledger" plaintiff had submitted. Plaintiff's counsel also declared that, based on her experience, the costs were reasonable and necessary to prepare for the trial, could not be " 're-used' at the next trial setting, and will have to be incurred again." Counsel explained the costs included "travel expenses for me, my associate, and our assistant to attend the trial, which we will have to do again," and travel expenses for plaintiff's experts, including the expert who was "mid-air" when the court declared the mistrial. (Plaintiff's attorneys are in Texas.)

Defendant argues plaintiff's counsel unnecessarily incurred travel expenses by choosing a later retrial date. We have rejected that argument. Defendant also contends that, because court rules required counsel's personal appearance at the FSC, her

32

travel time there must be excluded. (Citing Super. Ct. L.A. County, Local Rules, rule 3.25(f).) Again, plaintiff's counsel had to travel to attend a *second* FSC due to the mistrial. Sufficient evidence supported the court's award of costs.

In sum, the evidence supported the court's award of fees and costs except for five hours of time for plaintiff's lead attorney ($3,750.00) and five hours of time for her associate ($1,750.00).[13]

### iii. The court did not abuse its discretion in finding counsel's hourly rates reasonable

Defendant contends the trial court abused its discretion in applying counsel's requested hourly rates after initially finding plaintiff's counsel "did not provide any support, other than their own conclusions, that $750 and $350 per hour are prevailing and reasonable market rates in the community for similar actions." As discussed, the court was well aware of its earlier order and defendant's argument, but it was entitled to reevaluate counsel's declaration and consider argument before ruling on the amount of fees to award. Counsel's declaration and the court's own experience substantially supported the court's ultimate finding that the rates of $750 per hour for plaintiff's lead attorney—an attorney with "23 years of experience, primarily litigating elder abuse cases"—and $350 per hour for an associate attorney were "reasonable in light of the specialized nature of the litigation."

A reasonable hourly rate for purposes of calculating the lodestar is the reasonable market rate paid to attorneys of similar skill in the area. (*Ketchum, supra*, 24 Cal.4th at p. 1133; *Rankin, supra*, 226 Cal.App.4th at p. 700 [market rate generally is " 'based on the rates prevalent in the community where the

---

[13]     These calculations are based on the hourly rates of $750.00 and $350.00.

court is located' "].)  The market rate standard applies even if the attorneys claiming the fees represented the client on a contingent fee basis, as is the case here.  (*Rankin*, at p. 701.)  Courts " 'will look to equally difficult or complex types of litigation to determine which market rates to apply.' "  (*Id.* at p. 700.)

Plaintiff's lead attorney—"the managing partner in a national litigation practice involving elder abuse claims that are filed all over the country"—described under penalty of perjury her qualifications and experience, as well as the complex issues and evidence, the "high evidentiary standard," and the specialized knowledge, involved in litigating an elder abuse case.  Counsel declared, "Based upon my independent research and conversations with colleagues, attorneys practicing in the geographic area with my skill set charge between $500–$750 per hour as part of their normal retainer for hourly legal services, but the attorneys handling elder abuse cases generally work on a contingency fee basis."  She further declared that, when hired on an hourly basis—based on her training, experience of over 20 years, and the nature of her practice—her hourly rate is $750.00.  Counsel also declared—again, based on her research—the standard hourly rate in the area for associate attorneys is between $250 and $350.  Counsel declared that, if they billed for their services instead of being paid on a contingent fee basis, they would bill the associate's time at $350.00 per hour due to the specialized nature of the practice.  At the January 22 hearing, plaintiff's counsel also argued she had "investigated and researched" the prevailing rates.

We cannot conclude the court was clearly wrong in finding $750 and $350 per hour were reasonable rates given the nature of this case.  The court acted within its discretion in relying on

counsel's declaration and also had personal knowledge of the quality of counsel's work and the complexity of the issues, having presided over the mistrial and retrial.

## DISPOSITION

We affirm the court's March 18, 2024 order granting the mistrial and its May 3, 2024 order granting plaintiff's motion for sanctions under section 128.5.  We partially reverse the court's January 29, 2025 order awarding plaintiff $68,450.00 in attorney fees and $13,086.13 in costs as sanctions against defendant and its attorney.  We direct the court to vacate its order and enter a new order awarding plaintiff $62,950.00 in attorney fees and $13,086.13 in costs.  In all other respects the order is affirmed.  The parties shall bear their own costs on appeal.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**



EGERTON, Acting P. J.

We concur:



ADAMS, J.



HANASONO, J.